IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. |
| Plaintiff, | ) |
| v. | ) JUDGE |
| THE FOLLOWING REAL PROPERTY TO THE EXTENT OF $32,947.68: | ) |
| 3325 N. STATE ROUTE 51, GIBSONBURG, OHIO, PARCEL NO.: 21-31-00-0006-08, INCLUDING ALL FIXTURES, IMPROVEMENTS AND APPURTENANCES, | ) |
| Defendant. | ) **COMPLAINT IN FORFEITURE** |

NOW COMES plaintiff, the United States of America, by Carole S. Rendon, United States Attorney for the Northern District of Ohio, and James L. Morford, Assistant U.S. Attorney, and files this Complaint in Forfeiture, respectfully alleging as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

**JURISDICTION AND STATUTORY BASIS FOR FORFEITURE**

1. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C. Section 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. Section 981(a)(1)(C).

2. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. Section 1355(b). Further, in this regard, the United States will post notice of this action and a copy of the Complaint in Forfeiture on the defendant property in accordance with 18 U.S.C. Section 985(c)(1)(B).

3. Venue is proper in this district under: (i) 28 U.S.C. § 1355(b)(1) because acts giving rise to the forfeiture occurred in this district; and, (ii) 28 U.S.C. § 1395(b) because the property is located in this district.

4. The defendant property is subject to forfeiture to the United States – to the extent of $32,947.68 - under 18 U.S.C. § 981(a)(1)(C) in that it constitutes, or is derived from, proceeds traceable to a violation(s) of 18 U.S.C. § 1341 (mail fraud) and/or 29 U.S.C. § 501(c) (labor union theft).

## DESCRIPTION OF THE DEFENDANT PROPERTY

5. The defendant property is known and numbered as 3325 N. State Route 51, Gibsonburg, Ohio, including all fixtures, improvements, and appurtenances.

6. The defendant property is valued at approximately $279,900.00.

7. The legal description of the defendant property is as follows:

Being part of the West 1/2 of Section 31, Township 6 North – Range 14 East, Washington Township, Sandusky County, Ohio, and being more particularly described as follows:

Commencing at a Parker – Kalon nail found marking the Southwest corner of said Section 31;

thence, North 01 degree 24' 48" West, in the centerline of State Route 51 and in the West line of said section 31, a distance of 1729.75 feet to a Parker – Kalon nail set to mark the Place of Beginning of the Parcel herein described;

thence, North 01 degree 24' 48" West, in the centerline of State Route 51 and in the West line of said Section 31, a distance of 360.00 feet to a Parker – Kalon nail set;

thence, North 88 degrees 15' 51" East, passing through a 1/2" iron rod set at 40.00 feet, a total distance of 619.00 feet to a 1/2" iron rod set;

thence, South 01 degree 33' 14" East, 360.00 feet to a 1/2" iron rod set;

thence, South 88 degrees 15' 51" West, passing through a 1/2" iron rod set at 579.89 feet, a total distance of 619.89 feet to the Place of Beginning containing 5.1193 Acres (0.3306 Acres within State Route 51 Right-of-Way) of land more or less but subject to all easements and restrictions of record.

Bearings in the above description are based on a meridian assumed for the purpose of indicating angles only.

This description was prepared by ROY E. YEAGER, Registered Surveyor No. 6262, and was taken from an actual survey performed in April 2002.

Parcel Number: 21-31-00-0006-08.

8.  The record owners of the defendant property are David R. Sager and Lisa A. Sager, husband and wife. They acquired title through Instrument 200500004719, OR Book 13, Pages 471-472, of the Deed Records of Sandusky County, Ohio.

9.  The Home Savings & Loan Company of Youngstown holds (mortgage) interests in the defendant property.

**FORFEITURE**

**I. The Union and Its Employers**

10.  The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("United Steelworkers") is a labor organization engaged in an industry affecting interstate commerce within the meaning of 29 U.S.C. Sections 402(i) and 402(j), and an employee organization which represents employees engaged in an industry affecting interstate commerce within the meaning of 29 U.S.C. Sections 1002 and 1003. Local 5000 is a subordinate organization of the United Steelworkers and

represents unlicensed seamen working for private companies in and around the Great Lakes, including in the Northern District of Ohio.

11. Individual #1 served as the United Steelworkers Staff Representative to certain local chapters, including Local 5000. In that role, Individual #1 was responsible for conducting contract negotiations, offering opinions, and handling arbitration and grievances.

12. Individual #2 was the Financial Secretary at Local 5000 from in or around 1965 to in or around April, 2016. In that capacity, Individual #2 owed a fiduciary duty to the Union and its members. Individual #2's duties and responsibilities included keeping regular and correct accounts of all money received and paid, paying Local 5000 bills, and signing all checks.

13. Local 5000 had Collective Bargaining Agreements ("CBAs") with several companies, including American Steamship.

## II. David Sager

14. David Sager was the president of Local 5000 from in or around 1999 to in or around April, 2016. In that capacity, Sager owed a fiduciary duty to the Union and its members. In that role, Sager assisted members of Local 5000 by recruiting potential members from schools and by helping with job placement.

## III. United Steelworkers' Strike and Defense Fund Rules

15. The United Steelworkers adopted rules regarding the Strike and Defense Fund, including the following:

> a.) In order to receive approval [from the International President to strike], these rules must be read to the members at the meeting at which the vote to strike is taken.
>
> b.) The success of strike relief is determined by a conscientious Local Committee dedicated to the purpose of allocating resources according to the policies contained herein. Every effort should be made to help all members in need fairly and consistently.

4

      c.)    A strike is a hardship to all who participate in it, but a greater hardship for some than others. It makes no sense to pay everyone the same amount when some striking members have gotten jobs, have other sources of income or have lesser needs while others have no course of income and are in great need of assistance. For this reason, the Local, through its Strike Relief Committee, **must** allot strike relief on the basis of need. . . . The principle that strike assistance is paid on the basis of need has been a fundamental part of our Strike and Defense Fund rules throughout the Fund's 30-year history.

      d.)    Payments from the Strike Fund and Defense Fund are not designed to cover all needs of the members during a strike.

### IV. Local 5000 Strike Against American Steamship (September 17, 2009 to October 11, 2012)

16.     The CBA between American Steamship and Local 5000 was set to expire on or about August 1, 2009. During the negotiations to renew the CBA, American Steamship proposed, among other things, to eliminate David Sager's paid position. The parties agreed to an extension of the CBA to continue negotiations. After negotiations failed, American Steamship notified Local 5000 that it planned to implement certain provisions of its last, best and final offer, effective October 1, 2009. This offer included eliminating Sager's paid position.

17.     On or about September 14, 2009, Local 5000 provided notice that within 72 hours its members would commence an economic strike in support of the union's bargaining demands.

18.     On or about September 18, 2009, Local 5000 began striking against American Steamship.

19.     The United Steelworkers Union provided Local 5000 with funds to create a Strike and Defense Fund. The United Steelworkers' Strike and Defense Fund Rules provided, in part:

      a.)    The President, Financial Secretary, Treasurer and Staff Representative assigned to the strike have been to the bank and have signed signature cards. The bank must be aware that all four signatories are required to sign each check.

      b.)    The International Union stresses the Policy that fund monies must be disbursed based on need.

c.) Officers' Salaries/Allowances etc. are to cease during the strike if they are receiving Strike Benefits.

d.) No funds received by any Local Union from the Strike and Defense Fund may be disbursed except by check bearing the hand signatures of the Local Union President, Financial Secretary and Treasurer, and the hand signature of the Staff Representative assigned the responsibility for overseeing the strike. In a case where the Financial Secretary and Treasurer have been combined, then a third officer must be assigned the duty of signing the checks.

e.) Under no circumstance may the Local Union make assistance checks payable to any striking member. All checks should be made payable to third party vendors, utilities, banks, etc.

20. On or about October 8, 2009, Local 5000 established a financial account to administer the Strike Fund.

21. David Sager, Individual #1, and Individual #2 were listed as the only signatories on the Strike Fund Bank Account.

22. On or about October 12, 2009, David Sager and Individual #2 caused to be mailed to certain Local 5000 members a Request for Strike Assistance Form requesting information about familial income, number of dependents, familial assets, and fixed payment obligations.

23. In order to claim Strike Fund benefits, members had to submit a voucher with a copy of a bill. The voucher was then reviewed by a committee. Once the committee approved the payment, the voucher and documentation would be forwarded to the strike fund account signatories. Individual #2 then sent via United States mail the Strike Fund checks to the vendors.

24. From on or about January 25, 2010 through on or about December 31, 2012, David Sager submitted approximately $182,659.96 in vouchers to receive Strike Fund benefits, including the following:

| DATE | PAYEE | AMOUNT |
|---|---|---|
| **2/8/2010** | **Sandusky Cty Treasurer** | $ 1,683.04 |
| 3/12/2010 | Ford Credit | $ 498.79 |
| 4/12/2010 | Ford Credit | $ 498.79 |

6

| Date | Payee | | Amount |
|---|---|---|---|
| 5/5/2010 | Verizon Wireless | $ | 242.49 |
| 5/17/2010 | Ford Credit | $ | 498.79 |
| 6/8/2010 | Verizon Wireless | $ | 400.40 |
| 6/8/2010 | Ford Credit | $ | 498.79 |
| 6/23/2010 | David Sager | $ | 849.98 |
| **6/28/2010** | **Sandusky Cty Treasurer** | $ | **1,683.04** |
| 7/12/2010 | Ford Credit | $ | 498.79 |
| 8/11/2010 | Verizon Wireless | $ | 218.15 |
| 8/11/2010 | Ford Credit | $ | 498.79 |
| 9/7/2010 | Verizon Wireless | $ | 239.94 |
| 9/10/2010 | Ford Credit | $ | 498.79 |
| 9/13/2010 | David Sager | $ | 830.02 |
| 10/8/2010 | Ford Credit | $ | 498.79 |
| 10/13/2010 | Verizon Wireless | $ | 179.28 |
| 11/10/2010 | Verizon Wireless | $ | 144.22 |
| 11/10/2010 | Ford Credit | $ | 498.79 |
| 11/24/2010 | David Sager | $ | 609.33 |
| 12/8/2010 | Ford Credit | $ | 498.79 |
| 12/15/2010 | Verizon Wireless | $ | 352.79 |
| 1/3/2011 | David Sager | $ | 746.18 |
| 1/12/2011 | Verizon Wireless | $ | 213.33 |
| 1/12/2011 | Ford Credit | $ | 498.79 |
| **1/19/2011** | **Sandusky County Treasurer** | $ | **1,685.47** |
| 2/11/2011 | Ford Credit | $ | 498.79 |
| 2/22/2011 | Verizon Wireless | $ | 179.38 |
| 3/11/2011 | Verizon Wireless | $ | 263.85 |
| 3/11/2011 | Ford Credit | $ | 498.79 |
| 4/4/2011 | Ohio Dept of Tax | $ | 669.00 |
| 4/13/2011 | Verizon Wireless | $ | 475.07 |
| 4/13/2011 | Ford Credit | $ | 498.79 |
| 5/11/2011 | Verizon Wireless | $ | 254.65 |
| 5/11/2011 | Ford Credit | $ | 498.79 |
| 6/8/2011 | Verizon Wireless | $ | 274.94 |
| 6/8/2011 | Ford Credit | $ | 498.79 |
| **6/29/2011** | **Sandusky Cty** | $ | **1,685.47** |
| 7/7/2011 | Verizon Wireless | $ | 232.15 |
| 7/11/2011 | Ford Credit | $ | 498.79 |
| **7/11/2011** | **Ohler & Holzhauer** | $ | **423.85** |
| **7/22/2011** | **Home S&L** | $ | **879.55** |
| **7/22/2011** | **Home S&L** | $ | **166.90** |
| 8/10/2011 | Verizon Wireless | $ | 298.24 |

| | | | |
|---|---|---|---|
| 8/10/2011 | Ford Credit | $ | 498.79 |
| **8/23/2011** | **Home S&L** | **$** | **879.55** |
| **8/23/2011** | **Home S&L** | **$** | **166.90** |
| 9/7/2011 | Verizon Wireless | $ | 425.80 |
| 9/14/2011 | Ford Credit | $ | 498.79 |
| **9/23/2011** | **Home S&L** | **$** | **879.55** |
| **9/23/2011** | **Home S&L** | **$** | **166.90** |
| 10/12/2011 | Verizon Wireless | $ | 448.30 |
| 10/12/2011 | Ford Credit | $ | 498.79 |
| 10/19/2011 | David Sager | $ | 293.33 |
| **10/26/2011** | **Home S&L** | **$** | **879.55** |
| **10/26/2011** | **Home S&L** | **$** | **166.90** |
| 11/9/2011 | Verizon Wireless | $ | 224.01 |
| 11/9/2011 | Ford Credit | $ | 498.79 |
| **11/21/2011** | **Home S&L** | **$** | **166.90** |
| **11/21/2011** | **Home S&L** | **$** | **879.55** |
| 11/30/2011 | Walbridge Automotive | $ | 757.44 |
| 11/30/2011 | Walbridge Automotive | $ | 757.44 |
| 12/14/2011 | Verizon Wireless | $ | 107.35 |
| 12/14/2011 | Ford Credit | $ | 498.79 |
| **12/21/2011** | **Home S&L** | **$** | **879.55** |
| **12/21/2011** | **Home S&L** | **$** | **166.90** |
| 1/4/2012 | David Sager | $ | 270.01 |
| 1/13/2012 | Verizon Wireless | $ | 107.35 |
| **1/18/2012** | **Sandusky Cty** | **$** | **1,800.25** |
| **1/25/2012** | **Home S&L** | **$** | **879.55** |
| **1/25/2012** | **Home S&L** | **$** | **166.90** |
| 2/10/2012 | Verizon Wireless | $ | 108.33 |
| 2/10/2012 | Ford Credit | $ | 498.79 |
| 2/13/2012 | David Sager | $ | 971.28 |
| **2/21/2012** | **Home S&L** | **$** | **166.90** |
| **2/21/2012** | **Home S&L** | **$** | **879.55** |
| 3/12/2012 | Verizon Wireless | $ | 110.29 |
| 3/12/2012 | Ford Credit | $ | 498.79 |
| **3/20/2012** | **Home S&L** | **$** | **879.55** |
| **3/20/2012** | **Home S&L** | **$** | **166.90** |
| 4/9/2012 | Verizon Wireless | $ | 108.30 |
| 4/9/2012 | Ford Credit | $ | 498.76 |
| **4/18/2012** | **Home S&L** | **$** | **166.90** |
| **4/18/2012** | **Home S&L** | **$** | **879.55** |
| 5/9/2012 | Verizon Wireless | $ | 108.18 |

| Date | Payee | | Amount |
|---|---|---|---|
| 5/9/2012 | Ford Credit | $ | 498.79 |
| 5/16/2012 | David Sager | $ | 83.61 |
| 5/23/2012 | David Sager | $ | 171.68 |
| **5/23/2012** | **Home S&L** | $ | **166.90** |
| **5/23/2012** | **Home S&L** | $ | **879.55** |
| 6/1/2012 | David Sager | $ | 131.63 |
| **6/1/2012** | **Sandusky Cty** | $ | **1,890.25** |
| 6/13/2012 | Verizon Wireless | $ | 108.45 |
| 6/13/2012 | Ford Credit | $ | 498.79 |
| 6/15/2012 | David Sager | $ | 262.62 |
| **6/18/2012** | **Home S&L** | $ | **164.69** |
| **6/18/2012** | **Home S&L** | $ | **868.10** |
| 7/3/2012 | Verizon Wireless | $ | 108.30 |
| 7/9/2012 | Ford Credit | $ | 498.79 |
| **7/16/2012** | **Home S&L** | $ | **164.69** |
| **7/16/2012** | **Home S&L** | $ | **868.10** |
| 8/8/2012 | Verizon Wireless | $ | 108.02 |
| 8/8/2012 | Ford Credit | $ | 498.76 |
| **8/22/2012** | **Home S&L** | $ | **164.69** |
| **8/22/2012** | **Home S&L** | $ | **868.10** |
| 9/5/2012 | David Sager | $ | 957.24 |
| 9/7/2012 | Verizon Wireless | $ | 108.02 |
| 9/12/2012 | Ford Credit | $ | 498.79 |
| **9/19/2012** | **Home S&L** | $ | **164.69** |
| **9/19/2012** | **Home S&L** | $ | **868.10** |
| 10/3/2012 | Verizon Wireless | $ | 117.50 |
| 10/5/2012 | David Sager | $ | 136.82 |
| 10/10/2012 | Ford Credit | $ | 498.76 |
| **10/17/2012** | **Home S&L** | $ | **868.10** |
| **10/17/2012** | **Home S&L** | $ | **164.69** |
| **10/22/2012** | **David Sager** | $ | **99.95** |
| 11/9/2012 | Verizon Wireless | $ | 108.42 |
| 11/14/2012 | Ford Credit | $ | 498.79 |
| 11/16/2012 | David Sager | $ | 200.90 |
| **11/28/2012** | **Home S&L** | $ | **164.69** |
| **11/28/2012** | **Home S&L** | $ | **868.10** |
| **12/7/2012** | **David Sager** | $ | **303.68** |
| 12/12/2012 | Verizon Wireless | $ | 108.34 |
| 12/12/2012 | Ford Credit | $ | 498.79 |
| **12/19/2012** | **Home S&L** | $ | **868.10** |
| **12/19/2012** | **Home S&L** | $ | **164.69** |

| 12/28/2012 | Verizon Wireless | $ | 110.33 |
| 12/28/2012 | **Matt Tille Enterprise** | $ | **950.00** |
| 12/31/2012 | **Sandusky Cty** | $ | **2,002.20** |
| 1/11/2013 | Ford Credit | $ | 498.76 |

25. Each of David Sager's vouchers was approved and payment made.

26. To advance this scheme to defraud the United Steelworkers, Local 5000, and certain union members of money and property, David Sager made certain materially false and fraudulent representations, promises and omissions, including the following:

    a.) Sager used his authority over the Strike Fund in violation of the rules regarding Strike Fund disbursements.

    b.) Sager made false representations and material omissions to conceal his failure to follow the Strike Fund rules.

    c.) Sager made false representations and material omissions related to his need for the Strike Fund payments; to include: (i) Sager failed to disclose that in 2010 his spouse received approximately $33,500.00 in income and that he received approximately $22,310.00 in unemployment benefits; (ii) Sager failed to disclose that in 2011 his spouse received approximately $36,000.00 in income and that he received approximately $14,175.00 in unemployment benefits and approximately $13,801.00 in payments from Local 5000; (iii) Sager failed to disclose that in 2012 his spouse received approximately $35,000.00 in income and that he received approximately $2,430.00 in unemployment benefits; and, (iv) Sager failed to disclose tax refunds totaling $4,080.00.

    d.) Sager caused to be submitted vouchers for payments knowing that he did not qualify for the payments based on his family's income level.

    e.) Sager caused to be issued checks from the Strike Fund to himself and to vendors on behalf of himself and his designees.

27. The payments in bold type in paragraph 24, above, total $32,947.68 and represent payments made on the defendant property; to include: mortgage payments, tax payments, and payments made to improve/repair the defendant property.

28. While each of David Sager's requests for Strike Fund payments was approved, other Local 5000 members had requests that were disapproved.

10

29. On or about the following dates, for the purpose of executing the above-described scheme to defraud, David Sager caused to be sent via United States mail the following items, according to the directions thereon:

a.) On or about August 23, 2011, check for approximately $879.55 mailed from Middleburg Heights, Ohio, to Youngstown, Ohio.

b.) On or about December 21, 2011, check for approximately $879.55 mailed from Middleburg Heights, Ohio, to Youngstown, Ohio.

## V. Sager Expenditures During the Strike

30. During the same time period that Sager claimed Strike Fund benefits, Sager and his household made retail purchases exceeding $11,500.00; including: (i) $1,176.96 at Bed, Bath & Beyond; (ii) $3,324.46 at J.C. Penney; and, (iii) $3,102.65 at Kohl's.

31. During the same time period that Sager claimed Strike Fund benefits, Sager and his household made purchases of landscaping and gardening supplies totaling over $3,500.00.

32. During the same time period that Sager claimed Strike Fund benefits, Sager and his household made purchases of salon services totaling over $1,175.00.

33. During the same time period that Sager claimed Strike Fund benefits, Sager and his household made purchases of specialty meats and other food items apart from regular grocery shopping totaling over $2,275.00.

34. During the same time period that Sager claimed Strike Fund benefits, Sager and his household made purchases of furniture and appliances totaling over $950.00, including $507.06 at Mortise & Tenon (Amish Furniture).

## CONCLUSION

35. By reason of the foregoing, the defendant property is subject to forfeiture to the

United States – to the extent of $32,947.68 - under 18 U.S.C. § 981(a)(1)(C) in that it constitutes, or is derived from, proceeds traceable to a violation(s) of 18 U.S.C. § 1341 (mail fraud) and/or 29 U.S.C. § 501(c) (labor union theft).

WHEREFORE, plaintiff, the United States of America, respectfully requests that this Court enter judgment condemning the defendant property and forfeiting it to the United States – to the extent of $32,947.68 - and providing that the defendant property be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

Respectfully submitted,

Carole S. Rendon
U.S. Attorney, Northern District of Ohio

By: _____
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio
400 United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113
216.622.3743 / Fax: 216.522.7499
James.Morford@usdoj.gov

## VERIFICATION

STATE OF OHIO            )
                         ) SS.
COUNTY OF CUYAHOGA  )

I, James L. Morford, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action. The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

_____
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio

Sworn to and subscribed in my presence this 13th day of July, 2016.

_____
Notary Public

Anna J. Dudas
Notary Public, State of Ohio
Commission Expires 12-5-16

13